In re MISSIONARY BAPTIST FOUNDATION OF AMERICA, et al., Debtor.

Land WALL, Objecting Party,

v.

Robert B. WILSON, Trustee, Movant.

Bankruptcy No. 580–00084.

United States Bankruptcy Court, N.D. Texas, Lubbock Division.

Sept. 16, 1987.

Richard Hubbert, Sims, Kidd, Hubbert & Wilson, Lubbock, Tex., for trustee.

Pamela Arnold Owen, Law, Snakard & Gambill, Fort Worth, Tex., for Wall.

**MEMORANDUM OF OPINION CONCERNING AMENDED SECOND MOTION FOR INTERIM COMPENSATION BY TRUSTEE**

JOHN C. AKARD, Bankruptcy Judge.

Robert B. Wilson, the Trustee-in-Bankruptcy in these proceedings (Trustee), filed a Second Motion for Interim Compensation. Subsequently he filed an Amended Second Motion for Interim Compensation. Objections to both Motions were filed by Land D. Wall (Wall) who was the President and Chief Executive Officer of Missionary Baptist Foundation of America, Inc. (Debtor) prior to the institution of these proceedings under Chapter 11 of the Bankruptcy Code on October 15, 1980. The Debtor is a nonprofit corporation and has no shareholders.

The Application indicates that the Trustee was appointed with limited powers on October 16, 1980 and with full powers on October 26, 1980. Since that time, he has been operating the business of the Debtor which consists of nursing homes and a home-care service. The Trustee proposed and negotiated with the creditors several ways of reorganizing the Debtor. Finally, a Plan proposed by the Trustee was confirmed in October, 1981. Since that time, the Trustee has been operating the nursing homes and paying creditors in accordance with the Plan.

When the petition was filed, the Debtor had an interest in 27 nursing homes. The Debtor did not own any real estate, but leased the nursing homes. Some nursing homes had been subleased to others on what were referred to as Management Agreements. The Trustee was able to dispose of most of the nursing homes, in many instances being able to sell the leases for substantial sums. Under the Plan, the Trustee operates four nursing homes and the home-care service.

The Trustee has been quite successful in converting the Debtor's business to a profitable operation and has distributed to the unsecured creditors 70% of their claims.[1] The file in this case indicates substantial litigation, including matters which have been appealed to the United States Court of Appeals for the Fifth Circuit.

A hearing was held on these objections on August 11, 1987. At the conclusion of the cross-examination of the Trustee, the Court recessed the hearing because it had taken longer than the parties had estimated and the crowded condition of the Court's docket would not allow additional time for testimony on that day. At that time the Court ordered interim compensation to the Trustee in the amount of $75,000.00. Subsequently the parties have stipulated that the evidence was fully presented and that the Court can decide the matter based on the evidence presented on August 11, 1987 and the pleadings of the parties on file herein.

The Trustee's Amended Second Motion points out that in August, 1981, the Trustee received Interim Trustee's fees in the

1. The Trustee has objected to certain claims and has not made payments on those.

amount of $39,929.00 covering the Trustee's disbursements from October 26, 1980 through May 31, 1981. The present Motion is for compensation for Trustee's services based on disbursements from June 1, 1981 through March 31, 1987. The Trustee is requesting the maximum compensation permitted under the Bankruptcy Code, namely one percent of the amounts disbursed, for a total of $158,890.14. The Trustee and Wall agree that the Court may allow any reasonable compensation, but not to exceed one percent of the amount disbursed.

The Second Amended Motion outlines attorney's fees paid to the Trustee's law firm for legal services rendered in this proceeding. Attorney's fees were approved by the prior Judge of this Court in 1981 and 1985.

The Trustee alleged that Wall was not a creditor in these proceedings and thus could not object to the allowance of Trustee's fees. The Trustee bases his argument upon a settlement between the Trustee and Wall in an Adversary Proceeding which, according to the Trustee, settled all claims made by Wall in this bankruptcy proceeding. Wall asserts that the settlement related only to the Adversary Proceeding and not to other claims which he has filed in this proceeding.[2] The Court ruled, solely for the purposes of the hearing on the Objection to the Trustee's Second Amended Motion, that Wall was a creditor in these proceedings. Such ruling was without prejudice to the Trustee raising the same issue in other matters in this case.

The United States Trustee has filed a statement agreeing that the Trustee is entitled to the full amount of the compensation requested. No other creditors filed objections to the compensation requested by the Trustee. The attorney for one of the other creditors with whom the Trustee is still litigating advised the Court at Docket Call that his client felt the Trustee had earned the requested compensation. Wall's Objection alluded to a number of other differences which he has with the Trustee.

■ Wall's principal objection is that the Trustee did not submit detailed time records such as are required for a fee application for an attorney. While it might be desirable for a Trustee to have the same type of time records as are presented in connection with an application for attorney's fees, this Court does not feel that a Trustee in order to recover compensation upon which there are maximum limits by the statute should be held to the same record-keeping requirements as an attorney. Attorneys' time can readily be identified to a particular project, but the Trustee's time is spread through the entire case. Here the Trustee was not engaged in a liquidation, but rather a reorganization and continuing operation of a going business. The Trustee occupies the position of a chief executive officer of a business which requires a myriad of items over the course of the business day. It is not realistic to expect the Trustee to prepare a time slip on each function that he performs during the day. The evidence showed that the business office of the Debtor was located adjacent to the Trustee's law office and throughout the day, questions and problems are presented to the Trustee on an informal basis by members of the business office staff. It is certainly more efficient for them to be able to present these to the Trustee when the questions arise rather than having to stop work on that particular matter until the Trustee could be consulted at a later time.

Wall objects to the fact that the Trustee, in response to Wall's objection, attempted to estimate the time which he spent on this matter. The Trustee testified that he reviewed his records and estimated his time as closely as possible. Based on this Court's experience as a Chapter 7 Trustee, this Court feels that the estimates for supervising an ongoing business by the Trustee are conservative. It is the Court's experience that attempting to reconstruct time spent on a matter generally results in a gross understatement of the time. The Court therefore feels that the time estimate submitted by the Trustee represents the minimum time that he spent on this matter.

2. A priority wage claim by Wall has been paid by the Trustee.

Wall also objects to the fact that the Trustee shows considerable time in conferences with employees, both at the business office and at the various nursing homes. Managing a business of this magnitude requires a great deal of time and expertise. Add to this the position of trust occupied by a Trustee-in Bankruptcy and the additional reporting and fiduciary responsibilities placed on the operation of the business by virtue of the bankruptcy, and you have a situation which requires the Trustee to spend considerable time in consultation with the employees and supervising their efforts. Certainly these nursing homes do not run themselves; they have to be managed and supervised by the Trustee. The Trustee would be subject to criticism if he let the resident manager of each nursing home run it the way he or she wished.

Wall further objects to the fact that some of the services which the Trustee has listed appeared to be ministerial in nature—for example: signing checks. The review and signing of checks seems to be a method for the Trustee to carry out his fiduciary duties and to make sure the funds entrusted to him are properly accounted for.

It is Wall's contention that the compensation to the Trustee should be measured solely by the services rendered during the period of time covered by the Trustee's request. The compensation to the Trustee cannot be measured by the services rendered within one limited period of time. The Court's experience indicates that Trustees often perform a large percentage of their services in the first few weeks and months of a case when there may be little, if any, income into the estate. These services are rendered by the Trustee in the expectation that there will ultimately be funds in the estate with which to provide the Trustee compensation for the time and effort he is presently expending.

It is the opinion of the Court that the Trustee properly expended more than ample time and effort to earn the maximum compensation requested in this Application.

The Trustee pointed out that he was careful to distinguish between his services as Trustee and as attorney for the Trustee. In most instances the services as attorney for the Trustee were rendered by other members of his firm and he did not charge for attorney's services when assisting them in litigation in his capacity as Trustee.

Another factor which the Court may consider is the results of the Trustee's services. Clearly the record indicates that the Trustee has done an excellent job of turning around a financially troubled business. To award him less than the maximum compensation allowed by the Bankruptcy Code would be a gross injustice. The Trustee has more than earned the requested compensation.

Order accordingly.[3]

3. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052 which is made applicable to Contested Matters by Bankruptcy Rule 9014.